# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIVE FACE ON WEB, LLC | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CREMATION SOCIETY OF | : | |
| ILLINOIS, INC., *et al.*, | : | No. 18-1718 |
| Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                  **January 31, 2019**

Live Face on Web, LLC ("LFOW") is a developer and owner of copyrighted software and technology. (Third Am. Compl. ¶¶ 14, 19.) LFOW asserts that defendants Cremation Society of Illinois, Inc. ("CSI"), Illinois Cremation Direct, Inc. ("ICC"), Katie Sullivan, and Gerald Sullivan (collectively, "Defendants") violated these copyrights and breached a licensing agreement with LFOW. After granting Defendants' earlier motion to dismiss without prejudice, LFOW filed a Third Amended Complaint, again asserting claims under the United States Copyright Act and Pennsylvania law. Defendants have again moved to dismiss the claims. The Court grants in part and denies in part the motion to dismiss. Because the Court does not have personal jurisdiction over Defendants Gerald Sullivan and Katie Sullivan, it grants the motion to dismiss all claims against them. The Court also finds that LFOW has failed to state a claim for inducing copyright infringement against the remaining Defendants. However, LFOW may proceed with its direct copyright infringement and breach of contract claims against CSI and ICC.

## I. BACKGROUND

### A. Facts

LFOW is a developer and owner of "live person" software ("LFOW software") and video technology that allows the display of a "walking and talking" personal host on a website. (*Id.* ¶¶ 14-15.) LFOW licenses software packages to individuals and businesses for use on their websites. (*Id.* ¶ 14.) Each software package consists of three parts: (1) the video presentation of the spokesperson; (2) the LFOW software; and (3) the LFOW video player. (*Id.* ¶ 19.) LFOW alleges that these software packages are subject to an End User Licensing Agreement ("EULA") and two separate copyright registrations, No. TX 7-367-218 relating to LFOW software version 9.1.1 and No. TX 8-188-453 relating to LFOW video player version 4. (*Id.* ¶¶ 18, 22.) Under the EULA, an LFOW software package may be used on only one URL and cannot be assigned, sublicensed, or transferred without the express written consent of LFOW. (*Id.* ¶¶ 26-27.) If a licensee violates any provision of the EULA, the license to the LFOW software package "shall terminate immediately, without notice from LFOW, and all rights of such licensee in the licensed material shall be immediately revoked." (*Id.* ¶ 29.)

The EULA states that the licensee "agree[s] . . . that the sole and exclusive jurisdiction and venue for any litigation arising from or relating to this EULA or the subject matter hereof shall be an appropriate federal or state court located in the Commonwealth of Pennsylvania." (*Id.* ¶ 11.) LFOW asserts that the marketing group for CSI and ICC, including Katie Sullivan, Gerald Sullivan, and Lynn Elliott, authorized Lynn Elliott "to engage LFOW and license the LFOW Subject Software Packages." (*Id.* ¶¶ 10-11.) In doing so, LFOW claims that "CSI and ICC, through Elliott, agreed" to the jurisdiction and venue clause in the EULA, which was capitalized and conspicuous." (*Id.* ¶ 11.)

LFOW brings four claims in its Third Amended Complaint. First, LFOW asserts a direct copyright infringement claim against CSI and ICC. "CSI and ICC licensed the LFOW Subject Software Packages in March of 2015" and "[s]hortly thereafter . . . breached the respective EULAs by implementing it on multiple URLs." (*Id.* ¶ 45.) LFOW contends that this resulted in infringement of Plaintiff's copyrights "until at least June of 2018." (*Id.*)

Second, LFOW asserts a vicarious copyright infringement claim against Katie Sullivan, the Marketing Director for ICC who "directs the advertising and marketing efforts for ICC and its related company CSI," and Gerald Sullivan, the president of CSI and ICC. (*Id.* ¶ 56.) The two individual defendants "authorized and directed" Lynn Elliott to license the LFOW software packages and to "implement[ them] in a manner that violated the EULA and infringed Plaintiff's copyrights." (*Id.* ¶ 57.) As a result, Katie Sullivan and Gerald Sullivan "directly benefited from the infringing activities through CSI and ICC's increased attention of its online customers, increased conversion rates, and increased commissions." (*Id.* ¶ 59.)

Third, LFOW brings a claim for inducing copyright infringement against all Defendants. LFOW alleges that Defendants' implementation of the software packages, in violation of the EULA and copyrights, led to the copyrighted work being "copied and distributed." (*Id.* ¶ 66.) Specifically, "when a user's browser executed the HTML code from CSI and ICC's various URLs, a copy of the copyrighted material was copied and distributed to the users' computers to enable the software to function." (*Id.* ¶ 67.)

Fourth, LFOW asserts a breach of contract claim against CSI and ICC. "The EULAs were valid and binding contracts" between CSI and ICC and LFOW. (*Id.* ¶ 72.) Although LFOW performed under the contract by providing the video and software packages, CSI and ICC breached the EULA by implementing the software packages on multiple URLs. (*Id.* ¶¶ 73-74.)

B. **Procedural History**

LFOW initially filed this lawsuit in April 2018. After twice filing amended complaints in response to Defendants' motions to dismiss, LFOW responded to Defendants' third motion to dismiss. In October 2018, the Court granted the motion without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, finding that LFOW's claims were conclusory and failed to state a claim. After LFOW filed a Third Amended Complaint, Defendants have again moved to dismiss the complaint pursuant to Rules 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim. (Defs.' Mem. of Law in Support of Mot. to Dismiss Pl.'s Third Am. Compl. [Defs.' Br.] at 2, 8-9.)

Defendants also argue that LFOW has "improperly engaged in claim splitting" based on another ongoing lawsuit in the Northern District of Illinois between some of the parties. (*Id.* at 12-15.) Plaintiff filed that lawsuit in 2016 asserting a copyright infringement claim against CSI, ICC, Katie Sullivan, and Olson Burke/Sullivan Funeral & Cremation Center. (*Id.* at Ex. C.) While both lawsuits concern the use of LFOW software packages, the particular copyrights at issue, the alleged period of infringement, and the mechanism of infringement in each case differ.

## II. STANDARDS OF REVIEW

Once a defendant contests personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). When there is no hearing on the matter, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

The "defendant[s] . . . bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982). In reviewing a motion to dismiss for improper venue, courts "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In assessing a motion to dismiss pursuant to Rule 12(b)(6), "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## III. DISCUSSION

### A. Personal Jurisdiction

Defendants contend that they did not consent to personal jurisdiction despite the mandatory and exclusive jurisdiction and forum selection clause in the EULA. The Court agrees in part. LFOW has failed to establish that the Court has personal jurisdiction over Katie Sullivan and Gerald Sullivan, but it has met its burden for CSI and ICC.

*i. Enforceability of Forum Selection Clauses as a General Matter*

As a general matter, a party may consent to personal jurisdiction through a forum selection provision. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). In cases involving forum selection clauses, courts need not engage in a minimum contacts analysis to assess personal jurisdiction. *PNC Bank, Nat'l Ass'n v. Kanaan*, Civ. A. No. 11-7770, 2012 WL 1835534, at *7

(E.D. Pa. May 21, 2012). So long as "forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King*, 471 U.S. at 472 n.14 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Forum selection clauses are "presumptively valid" and must be enforced absent a showing that "enforcement of the clause would violate a strong public policy of the forum." *In re Exide Tech.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008). Here, Defendants do not contest the validity of the forum selection clause contained in the EULA. Nor do they argue that its enforcement would be unreasonable, fraudulent, or otherwise inappropriate. Rather, Defendants contend that they are not bound by the forum selection clause, because they never consented to it.

        ii.        *Applicability of Forum Selection Clause to Non-Signatories*

Non-signatories to a forum selection clause may nevertheless be bound by the clause in certain circumstances. For example, parties may be bound to a contract including a forum selection clause through traditional principal-agent relationships. *See E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001). To determine whether a principal would be bound to a forum selection clause in a contract signed by its agent, courts look to the relevant state law of agency. *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356-57 (3d Cir. 1986). Under Pennsylvania law,[1] agency requires the manifestation by the principal that the agent shall act for it, acceptance of the undertaking by the agent, and the understanding of the parties that the principal controls the undertaking. *Miller v.*

---

[1] Article 13.1 of the EULA states that "the validity, interpretation and legal effect of this EULA shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania." (Third Am. Compl. at Ex. C.)

6

*Cnty. of Centre*, 702 F. App'x 69, 72 (3d Cir. 2017) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980)).

"[N]on-signatories may [also] be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties." *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018). "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015).

Even if a non-signatory is a third-party beneficiary or a closely related party, courts cannot enforce forum selection clauses unless the clause is foreseeable to the non-signatory. *McGraw-Hill*, 909 F.3d at 64-65 (3d Cir. 2018). "A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation." *Id.* at 65. The Third Circuit requires that the *actual forum*—in this case, Pennsylvania—be foreseeable to the non-signatory. *Id.* at 65-66.

Here, Plaintiff offers different rationales to show that Defendants are bound by the forum selection clause in the EULA. First, Plaintiff argues that CSI and ICC are bound to the clause under an agency theory. (Pl.'s Resp. to Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. [Pl.'s Br.] at 9-10.) In response, Defendants mount several lines of defense: (1) that no "employee" of CSI or ICC ever entered into an agreement with Plaintiff; (2) even if Elliott did sign the EULA as alleged, agreeing to a Pennsylvania company's EULA does not satisfy the minimum contacts needed to establish personal jurisdiction over CSI or ICC; and (3) "Plaintiff has submitted no evidence that Elliott was authorized by Defendants to consent to their being hauled into Pennsylvania for

purposes of the claims in this lawsuit." (Defs.' Br. at 7-8, Ex. C; Defs.' Reply in Support of Mot. to Dismiss Pl.'s Third Am. Compl. [Defs.' Reply Br.] at 3.)

Defendants' myriad arguments are unavailing. Plaintiff has sufficiently alleged—and provided evidence to show—that, under Pennsylvania law, Elliott was acting as an agent of CSI and ICC when she entered into the EULA with Plaintiff and made changes to the websites at issue. Specifically, in its response, Plaintiff included depositions from another lawsuit, in which CSI and ICC's representative stated that Elliott "goes out and implements all the web-based stuff on CSI and ICC's behalf . . . at the direction of CSI and ICC." (Pl.'s Br. at 9-10, Ex. 2, Ex. 4.) Consequently, CSI and ICC are bound by the terms of the agreement that their agent made. They may not simply evade the contract's forum selection clause by now claiming ignorance to provisions in the agreements they authorized Elliott to make on their behalf.

To show personal jurisdiction over Katie Sullivan and Gerald Sullivan, Plaintiff peddles a different theory. According to Plaintiff, they are closely related parties to the EULA and are, thus, bound by its exclusive jurisdiction and forum selection clause. (*Id.* at 7.) Defendants argue that, even assuming Elliott was acting as an agent of the corporate defendants, Plaintiff has offered "no evidence that Elliott was acting as an agent for Katie or Gerald Sullivan in their individual capacities." (Defs.' Reply Br. at 6.)

The Court agrees that Plaintiff has failed to show that the individual defendants are bound as closely related parties to the forum selection clause. Even assuming that Katie Sullivan, as an employee of the corporate defendants, and Gerald Sullivan, as President of the corporate defendants, would qualify as closely related to the contract, the Court finds that Plaintiff has failed to marshal evidence that either of these defendants were aware not only of the EULA's existence,

8

but also the specific forum of Pennsylvania, such that a lawsuit brought here would be foreseeable. *See In re McGraw-Hill*, 909 F.3d at 65-66.

Without the benefit of this mandatory forum selection clause, Plaintiff has failed to demonstrate another basis for the Court to exercise personal jurisdiction over Katie Sullivan and Gerald Sullivan. Accordingly, all claims brought against them, including the vicarious infringement count in its entirety, are dismissed.

### iii. *Scope of the Forum Selection Clause*

Because Plaintiff has demonstrated that the corporate defendants are bound by the mandatory forum selection clause, the Court's final step of analysis concerns the scope of the forum selection clause: are all of Plaintiff's claims against the corporate defendants subject to the clause?

The forum selection clause states "that the sole and exclusive jurisdiction and venue for any litigation arising from or relating to this EULA or the subject matter hereof shall be an appropriate federal or state court located in the Commonwealth of Pennsylvania." (Third Am. Compl. ¶ 11.) Defendants argue that, even if they are bound by the forum selection clause within the EULA, Plaintiff's copyright claims are not subject to it. Specifically, Defendants contend that "[t]he forum selection clause is inapplicable to this action because a dispute relating to the EULA does not include copyright infringement disputes, and the EULA does not make any reference to including such disputes." (Defs.' Reply Br. at 7.)

"A scope-based challenge to the applicability of a forum-selection clause presents a quintessential question of contract interpretation." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018). "[W]hether or not a forum selection clause applies depends on what the *specific clause at issue* says." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070,

9

1075 (3d Cir. 1997). The Third Circuit has explained that the phrase "related to" is broader than the phrases "arising under" or "arising in." *Id.* Since the forum selection clause at issue here contains language substantially similar to both of these phrases, the Court will assess whether the claims brought in this lawsuit "relat[e] to" the EULA or its "subject matter" to determine the applicability of the forum selection clause to all claims brought in this case.

Because Defendants do not contest that Plaintiff's breach of contract claim—for a violation of the EULA itself—is covered by the forum selection clause, the sole question before the Court is whether Plaintiff's copyright claims "relat[e] to" the EULA or its "subject matter." The Third Circuit's recent decision in *McGraw-Hill* clarifies precisely this point. In *McGraw-Hill*, the defendant obtained access to copyrighted material through limited licensing agreements. 909 F.3d at 68. Plaintiffs' copyright and contract claims hinged on "whether [the defendant] violated the plaintiffs' copyrights by exceeding the scope of its licenses." *Id.* Given the relationship between the copyright claims and the licensing agreement, the Third Circuit found that the copyright claims were "disputes regarding" the licensing agreement, subject to the forum selection clause. *Id.* The Third Circuit also noted that "[g]iven the unique nature of copyright claims, we recognize that we should not permit a party to avoid a forum selection clause simply by pleading non-contract claims." *Id.*

For these same reasons, the Court finds that all of Plaintiff's claims are "litigation arising from or relating to this EULA or the subject matter hereof." Thus, the Court has jurisdiction over all claims against CSI and ICC, the parties bound to this forum selection clause under an agency theory.

**B. Venue**

Where "a forum selection clause exists, its effect on the issue of appropriateness of venue is essentially identical to its effect on the question of jurisdiction." *Provident Mut. Life Ins. Co. of Phila.*, 818 F. Supp. 116, 119 (E.D. Pa. 1993). Because there is a valid forum selection clause in this matter that is appropriately applied to the remaining defendants CSI and ICC and covers all of Plaintiff's claims, venue is also proper in this Court.

**C. Failure to State a Claim**

Defendants also move to dismiss the Third Amended Complaint based on the doctrine barring claim splitting and pursuant to Rule 12(b)(6). Because the Court finds that Plaintiff's two lawsuits against Defendants do not arise out of a single occurrence, Plaintiff is not barred from proceeding based on the doctrine against claim splitting. However, Plaintiff has failed to cure the defects previously identified by the Court in its claim for inducing copyright infringement. Thus, the Court will dismiss that claim.

  *i.* *Claim splitting*

The doctrine prohibiting improper claim splitting "prohibits a plaintiff from prosecuting his case piecemeal and requires that all claims arising out of a single alleged wrong be presented in one action." *Prewitt v. Walgreens Co.*, Civ. A. No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013). The doctrine "applies when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter." *McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008). "Parallel complaints need not be completely identical to fall under [the claim splitting doctrine], which proscribes *substantially* identical complaints." *Id.*

The Third Circuit has often applied the doctrine "to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those same claims."

*Leonard v. Stemtech Int'l, Inc.*, Civ. A. No. 12-86, 2012 WL 3655512, at *8 (D. Del. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4591453 (Sept. 28, 2012). The Third Circuit has also focused on the time period in which a plaintiff's claims in a second lawsuit arose relative to the filing of the first. "[T]o the extent that the events-at-issue in the second suit arose after the filing of the last complaint of record in the first case . . . and thus involve different factual allegations than those clearly at issue . . . in the first case—the second suit likely does not involve claim-splitting and should proceed forward in some way." *Id.* In other words, courts use the doctrine to prevent plaintiffs from "us[ing] the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints." *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).

Here, Defendants argue that LFOW has engaged in impermissible claim splitting because Plaintiff is also litigating a copyright infringement lawsuit against several of the same defendants in Illinois "involving video spokesperson software." (Defs.' Br. at 15.) However, Defendants brush over the factual differences in each case. As Plaintiff points out, the two cases involve different copyrights, different time periods, and different methods of infringement. (Pl.'s Br. at 13.) Moreover, the lawsuit before the Court involves a contract with a mandatory and exclusive forum selection clause not present in the Illinois case. (*Id.* at 13-14.) Taken together, the Court is not persuaded that the claims in the two cases involve "the same subject matter." *McKenna*, 304 F. App'x at 92. Nor have the Defendants pointed to evidence that Plaintiff filed this lawsuit to circumvent a denied request for leave to amend in the earlier-filed case. *See Walton*, 563 F.2d at 71. Thus, the Court does not find that this case is barred by the doctrine against claim splitting.

### ii. Direct Copyright Infringement

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Whelan Assocs., Inc. v. Jaslow Dental Lab, Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986). For direct copyright claims, "a plaintiff must allege volitional conduct on the part of the defendant." *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007).

In its previous order, the Court noted three reasons that Plaintiff had failed to state a claim for direct copyright infringement: (1) Plaintiff did not "state the time at which the EULA was initially violated or the period during which the actual violations of the copyright occurred;" (2) Plaintiff did not identify the agent allegedly acting on behalf of the Defendants; and (3) Plaintiff failed to identify the actions of the Defendants and instead referred to all four collectively in its allegations.

The Third Amended Complaint addresses the problems the Court previously identified. Instead of bringing the direct infringement claim against all four defendants, Plaintiff now asserts this claim solely against the corporate entities CSI and ICC. (Third Am. Compl. ¶¶ 42-54.) Plaintiff has identified the agent that CSI and ICC allegedly directed to license the copyrighted LFOW software package, which was subject to the terms of the EULA. (*Id.* ¶ 43.) Plaintiff alleges that CSI and ICC knew the terms of the EULA, including that the licensing agreement limited their use of the Software Package "to one URL of one web page of one web site on the hard drive of one web server." (*Id.*) Despite having this knowledge, Plaintiff alleges that CSI and ICC implemented the software package on multiple URLs, leading to the immediate revocation of their license from LFOW. (*Id.* ¶¶ 44-45.) As a result, Plaintiff alleges that CSI and ICC's continued use of the

software after their license was revoked constituted copyright infringement. (*Id.* ¶ 45.) Plaintiff asserts that this direct infringement began in March 2015 and continued to June 2018. (*Id.*)

Having cured the Second Amended Complaint's deficiencies, Plaintiff's allegations state a claim for direct infringement.

### iii. Inducing Copyright Infringement

A plaintiff must allege four elements to state a claim for inducing copyright infringement: "(1) the distribution of a device or product; (2) acts of infringement; (3) an object of promoting its use to infringe copyright; and (4) causation." *Live Face on Web, LLC v. The Control Grp. Media Co.*, 150 F. Supp. 3d 489, 500 (E.D. Pa. 2015). As the Court already indicated in its previous Memorandum in this case, the third element "generally requires" that a plaintiff allege "affirmative steps taken [by a defendant] to encourage direct infringement." *Id.* (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 (2005)).

Previously, the Court granted the motion to dismiss this claim because Plaintiff failed to allege any facts supporting the third prong, relying instead on a "formulaic recitation of the claim's elements." (Mem. and Order, Oct. 10, 2018 at 5.) Defendants again move to dismiss this claim, though LFOW argues that it has cured this defect. According to LFOW, the Defendants' objective for inducing copyright infringement was "to allow[] the software to function and keep visitors on CSI and ICC's websites longer, thus increasing conversion rates." (Pl.'s Br. at 17.) However, this still does not explain why Defendants would have wanted their customers or other third party visitors to the websites to violate the copyright. Nor does it explain what affirmative steps Defendants took to induce such infringement. *See Live Face on Web, LLC*, 150 F. Supp. 3d at 500 (dismissing inducement of copyright infringement claim because the plaintiff alleged that the defendant "intended for visitors to infringe copyright by downloading the LFOW Package onto

their computers' RAM" without providing "any theory as to why [the defendants] would do so"). Thus, the Court will grant Defendants' motion to dismiss the inducing copyright infringement claim.

### iv. *Breach of Contract*

LFOW asserts a claim for breach of contract against CSI and ICC. Under Pennsylvania law, a plaintiff must establish the following elements for a breach of contract claim: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). By alleging that CSI and ICC became bound by the EULA when they licensed LFOW's software package in 2015 and then breached the EULA by implementing the software on more than one URL as provided in the EULA, LFOW has stated a claim for breach of contract. (Third Am. Compl. ¶¶ 72, 74.)

## IV. CONCLUSION

For the reasons discussed above, the motion to dismiss is granted in part and denied in part. All claims against Gerald Sullivan and Katie Sullivan are dismissed for lack of personal jurisdiction. Because Plaintiff has failed to state a claim for inducing copyright infringement, that claim is also dismissed. However, Plaintiff may proceed against Defendants CSI and ICC on the direct copyright infringement and breach of contract claims. An order consistent with this Memorandum will be docketed separately.