# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIVE FACE ON WEB, LLC : | |
|     Plaintiff, : | CIVIL ACTION |
|               v. : | |
| CREMATION SOCIETY OF : | |
| ILLINOIS, INC., *et al.*, : | No. 18-1718 |
|     Defendants. : | |

## MEMORANDUM

**Schiller, J.**                                                                                                     May 16, 2019

Now before the Court are Plaintiff Live Face on Web, LLC's ("LFOW") motion to dismiss counterclaims of Defendants Cremation Society of Illinois, Inc. ("CSI") and Illinois Cremation Direct, Inc. ("ICC") (collectively, "Defendants"). Because the Defendants have failed to adequately plead claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and the Computer Fraud and Abuse Act, these counterclaims are dismissed. However, Defendants may proceed on all other counterclaims.

## I. BACKGROUND

This case involves contract and copyright disputes. Because the Court has already recited the facts of this case in two previous memoranda, it will limit this factual background section to the allegations within Defendants' counterclaims. Defendants contend that LFOW is a "copyright troll," "entrapping its customers in an unconscionable contract of adhesion and then claiming breach and copyright infringement." (Countercl. ¶¶ 1, 18.) LFOW advertises that purchasing its virtual salesperson software for a "one time fee starting at only $259.95" is "simple, brief, and straight to the point." (*Id.* ¶ 16.) LFOW states that, in three steps, customers can purchase its

software, which is "fully customizable" and which purchasers "are able to modify the settings [of] dynamically." (*Id.* ¶ 17.)

Despite these advertisements, LFOW's End User Licensing Agreement ("EULA")—the contract at issue in this case—includes a term that, Defendants contend, is intended to embroil unassuming purchasers in legal disputes. Specifically, the EULA includes a provision that restricts the use of the LFOW software to "one URL." (*Id.* ¶ 18.) Defendants make several claims concerning this provision. First, Defendants contend that such a restriction is "impractical (if not impossible) for most customers operating public websites that rely on internal debugging locations and serve users in multiple geographic locations." (*Id.*) Plaintiffs were aware of the impracticality of this term, but included it in the EULA so that they could "later assert a breach of the EULA and copyright infringement." (*Id.*) As evidence of this, Defendants point out that earlier versions of the EULA did not include the "impractical 'one URL' language." (*Id.* ¶ 28.) Indeed, Defendants appear to assert that Plaintiff even inserted this term without notice to Defendants after they had already agreed to the EULA.[1] (*Id.* ¶ 2.) Second, this EULA term is neither "clear, conspicuous, [n]or fairly explained to customers," despite LFOW's contention that the software is "fully customizable" and can be modified "dynamically" for their websites. (*Id.*)

In addition to Defendants' contentions about the "one URL" provision within the EULA, Defendants assert that LFOW breached its own EULA and the implied duty of good faith and fair dealing by "its unreasonable action and interpretation of its EULA." (*Id.* ¶ 27.) In its Complaint, LFOW alleges that Defendants "caused their website visitors to download and execute on their computers and other devices . . . the LFOW Subject Software Packages, thus causing such website

---

[1] Defendants assert in one part of their counterclaim that LFOW made a unilateral modification of the EULA. (*Id.* ¶ 2.) However, Defendants also contend that the "one URL" term was added to the EULA in 2014, which was before the parties entered into the EULA in 2015. (*Id.* ¶ 29.)

visitors to violate LFOW's rights." (*Id.*) However, Defendants contend that this alleged breach of the EULA occurred because of the way the Internet and LFOW's software code work—and that this portion of LFOW's Complaint essentially concedes this. (*Id.*) In their Counterclaim, Defendants assert that this amounts to an acknowledgement by LFOW that "the purported unlawful copying [which forms the basis of LFOW's breach and copyright infringement claims] is merely a function of how the Internet and LFOW's product work." (*Id.*) Therefore, Defendants argue, LFOW's interpretation of its own EULA is unreasonable. (*Id.*)

Defendants assert that LFOW has breached its contract in two other ways: (1) by changing its terms over time without notice to Defendants and (2) by seeking remedies in the event of breach that are not contemplated by the EULA. (*Id.* ¶¶ 56-57.) The EULA does not state that LFOW would assert a copyright infringement claim or a disgorgement claim for a breach of contract. (*Id.* ¶ 30.) To the contrary, the EULA provides that remedies in the case of breach are "to deactivate the product or charge additional license fees." (*Id.* ¶ 31.) Thus, by pursuing this lawsuit for statutory damages and disgorgement, LFOW "seeks a windfall far beyond what is permitted under its EULAs" and has, thus, "breached its own contracts and the implied duty of good faith and fair dealing." (*Id.* ¶¶ 30, 32.)

Defendants further contend that "substantial portions" of LFOW's copyrighted material "are not at all creative, original or protectable but rather are readily found in the public domain, are stock features, or are dictated by external factors." (*Id.* ¶ 19.) Because LFOW did not disclose that "the code [was] taken from the public domain," it "committed fraud on the Copyright Office." (*Id.*)

Based on these allegations, Defendants seek declaratory judgment that LFOW's copyright of its software code is invalid and bring five other counterclaims: 1) fraud in the inducement; 2)

3

breach of contract and the covenant of good faith and fair dealing; 3) unfair business practices under the California Unfair Competition Law, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the UTPCPL; 4) false advertising under the same three state statutes; and 5) violation of the Computer Fraud and Abuse Act. LFOW has now moved to dismiss five of the counterclaims for failure to state a claim.[2]

## II.    STANDARDS OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In assessing a motion to dismiss pursuant to Rule 12(b)(6), "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The standard of review for a motion to dismiss pursuant to Rule 12(b)(6) is the same for claims and counterclaims. *EMC Outdoor, LLC v. Stuart*, Civ. A. No. 17-5172, 2018 WL 3208155, at *1 (E.D. Pa. June 28, 2018).

## III.   DISCUSSION

LFOW moves to dismiss five of Defendants' counterclaims for failure to state a claim: fraud in the inducement; breach of contract and covenant of good faith and fair dealing; unfair business practices; false advertising; and violation of the Computer Fraud and Abuse Act. The Court agrees that Defendants have failed to allege sufficient factual allegations to support their

---

[2] LFOW also moves to strike 21 of the 48 affirmative defenses asserted by Defendants. The Court will address that motion in its accompanying order.

two claims arising under the UTPCPL as well as the Computer Fraud and Abuse Act. However, Defendants may proceed with their remaining counterclaims.

### A. Fraud in the Inducement

LFOW argues that Defendants have failed to state a claim for fraud in the inducement because they failed to identify "what specific representations were allegedly made or how they were false." (Pl.'s Br. in Supp. of Mot. to Dismiss Countercls. [Pl.'s Br.] at 5.)

Under Pennsylvania law, a plaintiff must establish the following elements to state a claim for fraud in the inducement: (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to its truth; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256-57 (3d Cir. 2013). When brought in federal court, such claims must comply with Federal Rule of Civil Procedure Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." *Coulter v. Paul Laurence Dunbar Cmty. Center*, Civ. A. Nos. 17-2868 & 17-3495, 2019 WL 1283000, at *2 (3d Cir. Mar. 19, 2019). To meet this standard, the pleading must include "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation and must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018).

Taking Defendants' allegations as true and construing them in the light most favorable to the Defendants, the Court finds that Defendants have sufficiently alleged their claim for fraud in the inducement. Defendants assert that LFOW advertised its product as "simple," "straight to the point," "fully customizable," and dynamic. (Countercl. ¶¶ 16-17, 21.) Indeed, LFOW advertised

5

its product as being implementable on a website in just three steps for a one-time fee. (*Id.* ¶ 17.) Yet contrary to these advertisements, Defendants have alleged, the product cannot be implemented on a website—which necessarily involves the use of several URLs—without violating the EULA or purchasing additional licenses. (*Id.* ¶ 18.) These allegations adequately notify LFOW of the allegedly false misrepresentations that Defendants relied on when it purchased LFOW's product. Defendants may proceed on this counterclaim.

**B. Breach of Contract and Covenant of Good Faith and Fair Dealing**

LFOW claims that Defendants have failed to assert a plausible breach of contract and have therefore failed to state a claim for a breach of the covenant of good faith and fair dealing. Specifically, LFOW argues that "there is no independent cause of action" for a breach of good faith and fair dealing without an underlying breach of contract. (Pl.'s Br. at 6.) In response, Defendants contend that Count III asserts a breach of contract claim alongside its claim for breach of the covenant of good faith and fair dealing. Thus, Defendants argue, its third counterclaim is properly pled.

For breach of contract under Pennsylvania law, the following elements must be pled: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 363 (E.D. Pa. 2015) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Section 205 of the Restatement (Second) of Contracts states that "[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." While the Pennsylvania Supreme Court appears to have adopted Section 205 and thus found that the covenant of good faith is implied in every contract, *see, e.g.*, *Bethlehem Steel Corp. v. Litton Industries, Inc.*, 488 A.2d 581, 600 (Pa. 1985), many courts have found that there is no independent

cause of action for breach of this duty apart from a breach of contract claim, *see, e.g., Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 819 (E.D. Pa. 2015); *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008). Accordingly, "a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim." *Moore*, 118 F. Supp. 3d at 819.

Here, the Court finds that Defendants have sufficiently alleged this claim. While a stand-alone claim for breach of the covenant of good faith and fair dealing would not stand, that is not what Defendants have alleged here. Rather, it is asserted alongside a claim for breach of contract. Because Defendants have sufficiently alleged that LFOW breached the EULA by, among other things, unilaterally changing its terms to limit the permissible use of the licensed software, causing damage to Defendants, they may proceed with this counterclaim.

### C. Unfair Business Practices and False Advertising

Defendants have asserted counterclaims for unfair business practices under the laws of three different states: the California Business and Professions Code § 17200 ("CA UCL"); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ("IL CFDBPA"); and the UTPCPL. In a separate count, Defendants have also asserted a false advertising claim under the same three statutes. LFOW contends that Defendants have failed to state either claim under any of the state laws.

#### 1. California Unfair Competition Law

LFOW contends that Defendants have failed to state any claim under the CA UCL, because they "fail to articulate any alleged violation of law" and simply contend that the LFOW EULA is unfair. (Pl.'s Br. at 7.) Plaintiff argues that the CA UCL does not allow courts to review parties' contractual obligations for fairness. (*Id.* at 7-8.)

7

The CA UCL prohibits "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999). Conduct is "unfair" under the UCL if it "violates established public policy or if it is immoral, unethical, oppressive, or unscrupulous and causes injuries to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Cal. App. Ct. 2006).

Here, at a minimum, Defendants' allegations support claims under the theory of unfairness. Defendants' contention that LFOW intentionally included a provision within its online, form contract that vaguely and inconspicuously defined whether the product could be used on a single "URL" or single "webpage" meets the standard for "unfairness" under the CA UCL for pleading purposes. *See* 61 Cal. Jur. 3d Unfair Competition § 2 ("The independent unfairness prong of the Unfair Competition Law is intentionally broad, thus allowing courts the maximum discretion to prohibit new schemes to defraud.") Defendants' argument that it is impossible to implement the product in the way LFOW now claims the EULA requires adds further support for these claims. Defendants may proceed on them.

2. *Illinois Consumer Fraud and Deceptive Business Practices Act*

Plaintiff argues that Defendants have failed to state claims under the Illinois statute because "Defendants' allegations boil down to the contention that LFOW provided its software pursuant to a EULA and expected its customers to comply with the EULA's terms," which does not amount to a deceptive act or practice. (Pl.'s Br. at 8.)

To state a claim under the IL CFDBPA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm. Mut. Auto.*

*Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). A statement is deceptive under the statute "if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The allegedly deceptive act must be considered within the context of "the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). To assess whether an IL CFDBPA claim satisfies the pleading requirements, courts must "ask whether the allegedly false and misleading statements on which [the claimant] base[s] his claim can be read to create a likelihood of deception or to have the capacity to deceive." *Bober*, 246 F.3d at 938.

The Court finds that Defendants have met this standard. For the same reasons discussed above, the vague, inconspicuous, and inconsistent definitions of precisely where LFOW's product could be implemented on Defendants' website support claims under this statute.

### 3. UTPCPL

"The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Bennett v. A.T. Masterpiece Homes*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012). The statute creates a cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by this act." 73 Pa. Stat. Ann. § 201-9.2(a). When analyzing claims under the UTPCPL, "Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for personal, family, or household use." *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002).

Plaintiff moves to dismiss Defendants' claims under the UTPCPL, because Defendants' allegations make clear that they acquired Plaintiff's software for use on their business website. (Pl.'s Br. at 8.) Thus, Plaintiff contends, the challenged activity falls outside the scope of the statute. (*Id.*) The Court agrees. *See Trackers Raceway, Inc. v. Comstock Agency, Inc.*, 583 A.2d 1193, 1197 (Pa. Super. Ct. 1990) (dismissing UTPCPL claims because the insurance policy at issue "was purchased for commercial purposes only"). Because amendment would be futile, the UTPCPL claim is therefore dismissed with prejudice.

### D. Violation of the Computer Fraud and Abuse Act

Plaintiff asserts that Defendants have failed to state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, ("CFAA") because Defendants have not sufficiently alleged that LFOW accessed Defendants' computers "without or in excess of authorization" or that LFOW caused the damages required to create a private right of action under the statute. (Pl.'s Br. at 9-10.)

The CFAA, in relevant part, imposes liability on anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). However, the statute creates a private right of action "only if the conduct involves 1 of the factors" set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V). 18 U.S.C. § 1030(g). Of those factors, only one potentially applies to the allegations in this case: "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, Defendants simply allege that "[a]s a direct and proximate result of LFOW's actions, [they] suffered loss." (Countercl. ¶ 72.) This allegation does not meet the requirements for bringing a private cause of action under the CFAA. Thus, the Court dismisses this claim. However, Defendants may, if able, amend this counterclaim to properly allege the requisite $5,000 loss.

## IV. CONCLUSION

For the reasons discussed above, the motion to dismiss Defendants' counterclaims is granted in part and denied in part. Defendants may proceed on all claims except those brought under the UTPCPL and the CFAA. An order consistent with this Memorandum will be docketed separately.